Good morning. May it please the Court, Dear Joe O'Connor, appearing on behalf of Appellate Plaintiff Ms. Dodson, who is present in the courtroom. The District Court erred when it granted summary judgment and concluded that collateral estoppel barred plaintiff from litigating her deliberate fabrication claim. The District Court judgment should be reversed because the defendants have not met their heavy burden in this disfavored doctrine and because plaintiff is entitled to every reasonable inference at summary judgment. There were three failures of the defendants that are outlined in the brief. Today I would like to talk about the defendant's failure to establish conclusively without conjecture or speculation that the dependency court necessarily decided the factual issues at play in the 1983 action. And those factual issues are, did the defendants fabricate evidence and was that evidence used, that fabricated evidence used to prosecute Ms. Dodson? Now ma'am, the dependency court was never asked to decide whether or not the police reports and the police, both their written reports and their reports to the social workers were fabricated, was it? That's correct. So they were not faced with that. So we know that that issue was not before the dependency court. But is it sufficient that the dependency court's factual and findings incorporate the facts set out in the police report or the police interview, that they relied upon the police reports in reaching the decision that it did? Is that sufficient for issue preclusion? It didn't happen, Your Honor, respectfully in this case. They did not rely on the police report. Well, and I want to entertain you on that issue as well. But would the reliance on the police reports, if it was so integral to the dependency's court decision, would that preclude the issue from being raised in your federal suit? No, they would have to make specific findings, factual findings that would eliminate the basis for the deliberate fabrication claim. And just finding those credible and following those or incorporating those into the decision is not sufficient? Well, Your Honor, I think an express finding that the police did not fabricate evidence and that there was no fabrication. She was never asked or the dependency court was never asked to do that, as we have discussed. Let me then allow you to go into the issue then of why you believe that the dependency court did not so incorporate the findings of the police report or what the police said in their written reports and to the social worker, why that was not integral to the dependency court's finding as a matter of fact. Thank you, Your Honor. The relevant excerpts of the record are at ER 56 and 57, which is the original allegation, and compare that with ER 78, which is the amended allegation that the court, dependency court, found to be true. And the facts that were stricken from the original allegation were facts that derived from either the police report or oral statements made by one of the defendants. You're saying to compare what the complaint that gave rise to the dependency court's action and then the dependency court's opinion to compare those things? Right. The factual findings that the dependency court made are in its entirety in ER 78. And the factual findings... Counsel, let me ask you a question about that. So one of the facts the dependency court found was on August 30, 2017, the mother and the father threw objects at each other in the presence of the child, correct? Yes. And you would be precluded from advancing a claim that was contrary to that finding by the doctrine of collateral estoppel, correct? No, not necessarily, Your Honor, because there's... Okay, but you would agree at least that that was necessary, that that was decided, right? When Ms. Dotson submitted on the issue because it was a foregone conclusion, that was one of the facts that the court found, yes. And your view is that irrespective of finding that fact, you're challenging other statements and other things that were in the police report, correct? Well, Your Honor, for purposes of the 1983 action, whether the parents tossed items while in the house is of no import, because there's not a corresponding conclusion that that action caused injury to the child. Well, in any case, in any... I'm sorry, Judge Sanchez. No, I wanted to follow up. One of the allegations that was stricken by the court was about mother being knocked unconscious. And what struck me about that was that that is not an allegation that was in the incident, the police report itself. It must have come either from the SCAR report or from statements that one of the officers made to the social worker. And so that seems to me to be, at least to tell, that the court did not just rely on the incident report. Could you speak to that point? The court didn't rely on the police report at all, Your Honor. All of the facts that are contained in the amended allegation come from independent sources, and I can cite those to you. With respect to the throwing objects, you can find that. These are independent interviews by the various social workers with Dotson, Suts and Williams, other police officers, not the defendants in this case. They can be found at 58, where Dotson is reported saying I was throwing stuff, around 59, where Sutton is saying Dotson was throwing things and breaking things, 71, where a social worker reported that Dotson admitted that they were throwing things at one another, and 75, where a social worker reviewed photos of the house and saw that things were out in disarray. It seems to me that there are multiple versions of how the child may have been injured during this altercation. One version says swinging of a stick. Another one says the mother was punched in the face and the baby was dropped. And wouldn't it be a fair reading of what the dependency court did, that it didn't try to decipher how the injury occurred and struck those allegations, but it did make a finding that the baby was injured as a result of the parents' argument and altercation that day? Well, Your Honor, there's also facts in the record at 73, most particularly, when Sutton is reported as saying that the child was crawling around and that she bumped her head and that the mother put ice on the head. That is a statement that would explain the injury. That was not accepted by the dependency court, was it? The dependency court found, as a matter of fact, that during the physical altercation on 8-30-17, the child, G, was injured and suffered a hematoma to the right side of the child's forehead and a small abrasion to the child's nose. So whether or not we believe that the child was injured in another way is irrelevant to our discussion today. It's that the court found that the injury occurred during the altercation. The court found that the injury occurred while she was at the house, yes, but it specifically avoided finding how the child was injured. She could have fallen. It didn't happen that way, but the court's decision could have been based on the statements in the record, and there were multiple statements in the record, 66, 68, 69, 71, and 73, where various people are saying that the child could have bumped her head while crawling around. Some of that is a distortion, a misinterpretation of what people had reported, but clearly Sutphin is reported as saying that that happened there. In addition, we have evidence that there was a policy reason here for, first of all, I apologize, even if the court found that the child was injured and were stuck with that finding, that the child was injured in the house, that does not change the fact that the police arrived at the scene and made up a narrative out of whole cloth. The fabrications are in what the police claimed that various witnesses reported to them. None of those statements, and that's the fact that this court must accept as true from the plaintiffs, occurred. None of those statements were made. What they did was they saw a child with a bump on her head and then looked for a narrative to explain it. That's why the story varies from the child was dropped outside on the sidewalk, a stick was flung at her, the child fell out of the mother's arm when she was punched in the face. That is why there's all these variations, and they're all from defendants. Your point is then that even if you were precluded from arguing on the issue of the child being knocked unconscious and what the police reported to different agencies would not be precluded because the dependency court did not reach those issues, that would still form the basis for your 1983 claim. There are fabrications in the report, and that is the allegation, and plaintiff is entitled to her day in court on that. Your Honor, there were some policy issues that I wanted to discuss, but I do see I'm out of time. Will the court entertain any time for rebuttal? We'll give you a little bit of time for rebuttal, not much. Thank you. May I proceed, Your Honor? Yes, please. May it please the court. Your Honor, there are three facts that the dependency court found, and the only source for that information comes from the police reports. Most importantly is the question of the timing of the child's injury. The only evidence we have that refutes the appellant's version of that is that this had occurred earlier in the morning, that the injuries were not apparent in the morning, that it was impossible for Diaz to have determined that the child was injury-free in the morning. And Diaz is a named defendant in the suit? Yes, Your Honor. Counsel, I have trouble with that argument, because I've read both of the reports, and the social workers themselves interviewed both parents, right? Yes, they did. And both parents described the altercation differently, but they both described the altercation, right? Yes, they do. And they also can be read as both saying that the child was there during the altercation, either crawling on the ground, or in some other way, not in exactly the way the police report said, but that the child was there, right? Yes. And so the dependency court's finding, for example, that on 8-30-2017, the mother and father threw objects at each other, and they both admitted to the social worker that they threw objects, right? Yes. In the presence of the child. So that particular factual finding, why couldn't that have been based not on the police report, but on what the parents told the social workers in the interviews with the social workers? No, Your Honor. I'm talking about whether or not the injury predates the timing of the altercation. We have evidence from Diaz stating that there were no injuries apparent on the child in the morning. But as I understand, I believe the mother said that the baby might have been in the SUV, or in some way in which Officer Diaz could not have seen the child. Why are those Why isn't it possible for the officer to potentially lie about that, and yet the child still have been injured later in the afternoon? Why are we precluded from considering that? Because the dependency court found that there were injuries to the child. They've discounted the injury to the nose, which the EMTs had rejected as being scabbed over, and therefore not fresh. Going to Judge Sanchez's question, how does that bear on the question of whether Officer Diaz lied when he said he saw the child uninjured in the car? The child, he could be lying about seeing the child uninjured in the car, and yet the child was still injured in the house. But he still could have made up that he saw her uninjured because he wanted to go after the mother and get her arrested. I mean, it may well be that if this case goes to a jury, a jury would be exceedingly skeptical of that argument, but I don't understand how the fact that the child was hurt during the altercation means that he wasn't lying when he said he saw the child uninjured in the car earlier that day. What it confirms, Your Honor, the point I guess I'm not making particularly artfully here is that the dependency court had to conclude that the child was in fact injured during the altercation. Yes, but the dependency court didn't have to conclude that the officer didn't lie when he said he saw the child uninjured earlier. Those two things are not inconsistent. But the only source of evidence that the child was in fact injured during the altercation comes from the police report. But I... The mother is denying that. So are the witnesses in their version of events to the social workers, Your Honor. But then, counsel, let me ask you the same question I asked opposing counsel. There is an original allegation about mother being knocked unconscious. That does not come from the incident report. There's no mention of mother being knocked unconscious in the incident report. So by, you know, following that process along, the dependency court then must have considered other sources other than the incident report in order to consider that allegation and decide to strike it. Yes, Your Honor. The one point I would make about whether or not the mother was knocked unconscious is that whether or not the mother was knocked unconscious, that's not an essential fact necessary for the dependency court's findings. So whether or not Deputy Diaz is reporting that accurately or inaccurately, whether or not it's reflected in the report, that's not the basis for the dependency court's findings. It's not necessary to sustain the dependency court's findings. Well, that's a different question than whether the incident report is the only source upon which the dependency court relied. I mean, it seems to me, as I said before, there are multiple versions of what may have happened that caused injury. The dependency court is sitting there and decides not to decide that question. It results in a determination that the baby was injured, but not how. And so there are many matters that were never placed before the dependency court, as Judge Foote explained, you know, about whether the police were lying or telling the truth or to whom. Why should any of those things be precluded under the collateral estoppel doctrine, which requires specificity as to those particular issues? Well, the specific issues here, Your Honor, are whether or not the child was injured during the course of that altercation and therefore whether or not the appellant could legitimately be charged with failure to protect, as the dependency court found. That's the essential. That's not the way your friend phrased it, and I don't think that was even the way the district court phrased it. I mean, as I understand it, the district court identified specifically three bases for the fabrication claim, and one of them was that Diaz could not have seen the child uninjured in the car during the morning incident. And if the officer made that up, and that was one of the things that caused the mother to be charged, why couldn't that incident and that claim form the basis of 1983? The district court found that it could have, but found that it was precluded. Yes, Your Honor, the district court did because the district court found that the dependency court must have accepted Diaz's testimony in that regard, and therefore it found... I agree with you that that is what the district court, in fact, did find, but that's where I have the problem. Like, just as an example, I'm looking at ER 71, the interview with the family, and the mother and the father are looking at each other and the child, she always likes to walk and pulls on stuff, and she's always bumping her head. It's true that the mother said this isn't when the child was injured, but the mother also said she was unconscious. So we, for me, I just can't see anything that tells me exactly what the dependency court relied on, and that could have relied on the statements of the mom, could have relied on the statements of the dad, of the friend. So tell me why I'm wrong here. Your Honor, if the dependency court accepts that the dependency court accepts the mother's version of events, which is that perhaps the child was wandering around during the altercation, the argument, and that's how she injured her head, if the dependency court accepts that, then there's no failure to protect. It's not the result of anything the mother did or didn't do with respect to the altercation. See, I don't understand that either, because one of the things the dependency court found was having these physical fights by the parents with this little child there endangers the child regardless of the exact mechanism of injury. If parents are throwing objects at each other when the child is around, that puts the child in danger regardless of how the child is injured on this one occasion. Yes, but the dependency court likewise found that the child actually was injured as a result of the altercation. It neglected to pinpoint a specific fact that supported that, but the dependency court is weighing all of the statements submitted, everything contained in the court. I don't see the court finding that. What I find the court is saying, during the altercation the child was injured, and without a discussion at all of what the mechanism was. Mr. Dargan, if I could go, I would be remiss if I didn't point this out. In your briefing, you state not once, but twice, that Dodson, quote, pled no contest to one count of misdemeanor willful harm or injury to a child under the California Penal Code. That's at pages 9, and then again at 10 and 11. That's not correct, is it? That is not correct. She pled to Van, that is incorrect. This would be a very different case if that was the fact. Yes, it would. All right. It's in your brief. Understood, Your Honor. My apologies. That is not correct. And counsel, to point to something else in your brief, at page 26, you say the identical issue requirement is satisfied because the issues are the same. And you, and quote, whether or not Gee was exposed to an unjustifiable risk of harm or harm during a physical altercation between Appellant and Sutphin on August 30, 2017. And that's the basis of your argument that the issues for collateral estoppel purposes are identical, right? Yes, Your Honor. Did you want to wrap up with any final thoughts, Mr. O'Connor? No, thank you, Your Honor. Okay. Ms. O'Connor, I'll give you just a couple minutes. I'll be very quick. Your Honor, the plaintiff's 1983 action is that the entire police report is a fabrication. What happened is the police arrived already annoyed with the couple and were intent on sending both to jail. They happened to observe the injury on the child's head, and everything else is a fabrication. To allow the district court decision to stand is to, the defendant's takeaway from this and those like them is, if you're going to lie, lie big. Do it often, do it in as many venues as you can, because when the first ill-gotten gain will save you from liability, and it will defeat the purpose of 1983. So public policy reasons, which are part of the collateral estoppel legal analysis. Right. So, and that's what I'm saying. The policy behind 1983, the purpose of it is to deter State actors from using the badge of their authority and deprive individuals of their federally guaranteed rights and to provide relief to victims when the deterrence is not effective. And that's from Wyatt v. Cole, 504 U.S. 158. Ms. Stotson is entitled to her day in court, and her submission at the dependency court was motivated by a desire to go along and get along in a private confidential setting so that her children could be returned to her as quickly as possible. Thank you for the extra time, Your Honor. Thank you. All right, the matter will stand submitted, and we will call our next case.
judges: BENNETT, SANCHEZ, Foote